UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **BITLER INVESTMENT VENTURE II, LLC,** et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  CAUSE NO. 1:04-CV-477 |
| **MARATHON ASHLAND PETROLEUM LLC,** et al., | ) ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

The Defendants filed a motion to compel on January 5, 2007, requesting that the Court order the Plaintiffs to produce fifteen e-mails provided to the Plaintiffs' expert and listed on the Plaintiffs' privilege log.[1] (Docket # 73.) The Plaintiffs, however, maintain that the e-mails are protected by the attorney-client privilege and the work product privilege, and, in any event, the e-mails "have nothing to do with" the expert's opinion. (*See* Pls.'s Resp. to Mot. to Compel Produc. of E-mails ("Resp. Br.") 7.)

For the following reasons, the Defendants' motion to compel will be GRANTED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiffs are two sets of limited liability companies ("LLCs"); one is managed by Carl Bitler on behalf of the Bitler family, and the other is managed by Phil Rodenbeck on behalf of the Melching family. (Aff. of Carl Bitler ("Bitler Aff.") ¶ 2; Aff. of Phil Rodenbeck

---

[1] Pursuant to Federal Rule of Civil Procedure 37, the Defendants also request attorney fees and costs incurred in advancing the motion to compel.

("Rodenbeck Aff.") ¶ 2.) Together, the Bitler and Melching families initiated this lawsuit, eventually hiring Frederick Emhardt of the law firm Plews Shadley Racher & Braun LLP to represent them. (Bitler Aff. ¶¶ 4-5; Rodenbeck Aff. ¶¶ 4-5.)

At issue in this lawsuit are damages allegedly caused by the Defendants to various gasoline stations located in cities and small towns in Michigan, Indiana, and Ohio. (First Am. Compl. ¶ 17.) All but one of these properties are owned 50/50 by one of the Bitler LLCs and one of the Melching LLCs, who leased the gasoline stations to the Defendants and/or their predecessors in interest. (Bitler Aff. ¶ 3; Rodenbeck Aff. ¶ 3; First Am. Compl. ¶ 17.) The Bitler LLCs and the Melching LLCs are now suing the Defendants for breach of contract and waste, alleging that the Defendants allowed the properties to deteriorate. (First Am. Compl. ¶ 18.) To determine the amount of damages purportedly caused by the Defendants' breach of contract and waste, the Plaintiffs hired James Kerwin, a certified public accountant, to render an expert opinion and to testify regarding damages. (Aff. of James Kerwin ("Kerwin Aff.") ¶ 2; Resp. Br. 3.)

During the course of litigation, Emhardt communicated with Bitler and Rodenbeck primarily through e-mail, and Bitler subsequently forwarded fifteen of those e-mails to Kerwin. (Bitler Aff. ¶¶ 6-7; Rodenbeck Aff. ¶¶ 3, 6.) Emhardt and Rodenbeck maintain that they did not consent to Bitler's actions and that they did not know that Bitler forwarded the e-mails to Kerwin until Kerwin provided his expert opinion in September 2006. (Rodenbeck Aff. ¶¶ 8-9; Resp. Br. 2.) Furthermore, Kerwin contends that although he made hard copies of the e-mails for his file, he did not consider them when forming his opinion, as he "[does] not believe there is any information in those emails that relates to the expert opinion [he has] in this case." (Kerwin Aff.

2

¶ 3.)

The Defendants now move to compel the production of these e-mails, asserting that Federal Rule of Civil Procedure 26(a)(2)(B) mandates disclosure because the e-mails were part of Kerwin's file. The Plaintiffs, however, assert that the e-mails are protected by the attorney-client privilege and the work product privilege; they also maintain that because the e-mails had nothing to do with Kerwin's opinion, Kerwin did not consider the e-mails.

Due to Plaintiffs' requests and in order to give full consideration of the record, the Court conducted an *in camera* inspection of the e-mails at issue. (Docket ## 80-81.) The matter is now ripe for decision.

## II. DISCUSSION

Federal Rule of Civil Procedure 26(a)(2)(B) requires parties to disclose to their opponents any information "considered" by their testifying expert. In *Karn v. Ingersoll-Rand*, 168 F.R.D. 633 (N.D. Ind. 1996), this Court found that the term "considered" simply means "'to take into account,' [and] clearly invokes a broader spectrum of thought than the phrase 'relied upon,' which requires dependence on the information." *Id.* at 635 (quoting Webster's New Riverside University Dictionary at 301, 993 (1984)). Furthermore, the Court adopted a "bright-line" rule of disclosure, holding that Rule 26(a)(2)(B) "'trump[ed]' any assertion of work product or privilege" and "mandat[ed] disclosure of all materials reviewed by an expert witness."[2] *Id.* at 639.

Plaintiffs assert that, regardless of this Court's ruling in *Karn*, the attorney-client and

---

[2] The Court's ruling in *Karn* is often cited as the "majority view" and has subsequently been adopted by various Circuit Courts of Appeal. *See, e.g.*, *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713-17 (6th Cir. 2006); *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005); *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001).

3

work product privileges still apply here. In addition, they assert that Kerwin could not have possibly "considered" the e-mails when rendering his opinion because the e-mails have nothing to do with the subject of the opinion, specifically the amount of damages. These arguments will be discussed in turn.

**A. The Plaintiffs' Argument That the E-mails Are Protected by Privilege Is Unconvincing**

*1. Attorney-Client Privilege and the Common Interest Doctrine*

The Plaintiffs maintain that because Rodenbeck and Emhardt did not consent to Bitler's act of forwarding the e-mails to Kerwin, the attorney-client privilege is preserved. Specifically, they maintain that the e-mail communications between Emhardt, Bitler, and Rodenbeck are protected under the common interest doctrine.

The general rule regarding privileged communications is that "disclosure of confidential, privileged information to third parties waives any applicable privilege." *Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 460 F. Supp. 2d 915, 917-18 (S.D. Ind. 2006) (citing *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 140 (N.D. Ill. 1993)). The common interest doctrine is an exception to this general rule, providing that waiver does not occur if the disclosure of otherwise protected communications "was made to a third party with a common legal interest." *Id.* at 918 (quoting *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 224 F.R.D. 438, 442 (S.D. Ind. 2004)). The purpose of the common interest doctrine is to "'foster communication' between parties that share a common interest and to 'protect the confidentiality of communications . . . where a joint . . . effort or strategy has been decided upon or undertaken by the parties and their respective counsel.'" *Dexia Credit Local v. Rogan*, 231 F.R.D 268, 273 (N.D. Ill. 2004) (quoting *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997)).

4

The common interest doctrine "is not an independent source of confidentiality." *Reginald Martin Agency*, 460 F. Supp. 2d at 917 (quoting *BASF Aktiengesellschaft*, 224 F.R.D. at 440). Rather, "the common interest doctrine only applies to protect documents which otherwise fall under some privilege. *If no privilege shields a document from discovery, then the common interest doctrine is of no use to a party.*" *Allendale Mut. Ins. Co.*, 152 F.R.D. at 140 (citation omitted) (emphasis added). Accordingly, the common interest doctrine is often described as an "extension" of the attorney-client privilege. *Evans*, 113 F.3d at 1467; *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 416 (N.D. Ill. 2006); *McNally Tunneling Corp. v. City of Evanston*, No. 00 C 6979, 2001 WL 1246630, at * 2 (N.D. Ill. Oct. 18, 2001) (noting that the common interest doctrine "simply extends the protection afforded by other doctrines, such as the attorney/client privilege and the work product rule").

Here, Emhardt represents the Bitler LLCs and the Melching LLCs jointly in this case; therefore, the Court will assume *arguendo* that the e-mail communications among Emhardt, Bitler, and Rodenbeck are protected under the attorney-client privilege via the common interest doctrine. The Plaintiffs argue that under the common interest doctrine, the attorney-client privilege "cannot be waived without the consent of all the parties . . . ."[3] *Dexia Credit Local*, 231 F.R.D at 273 (quoting *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D 21, 29 (N.D. Ill. 1980)). As a result, the Plaintiffs maintain that because Rodenbeck and Emhardt failed to consent to Bitler's actions, the attorney-client privilege is not waived and the e-mail communications to Kerwin cannot be disclosed. In so arguing, however, they fail to appreciate

---

[3] In a diversity case such as this, Indiana law controls claims of attorney-client privilege. *Reginald Martin Agency*, 460 F. Supp. 2d at 917. Although Indiana courts have recognized the common interest doctrine, *see Corll v. Edward D. Jones & Co.*, 646 N.E. 2d 721, 725 (Ind. Ct. App. 1995), they ostensibly have not yet delineated what constitutes waiver under the doctrine.

5

the impact of *Karn* on the disclosure of privileged communications.

As discussed *supra*, in *Karn* this Court held that Rule 26(a)(2)(B) "'trump[ed]' any assertion of work product or privilege." *Karn*, 168 F.R.D. at 639. Subsequently, other courts adopting the *Karn* rule have held that materials considered by the testifying expert must be disclosed even if the communications were protected by the attorney-client privilege. *See, e.g.*, *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, No. 03-6025(FLW), 2006 WL 946469, at *8 (D.N.J. Oct. 16, 2006); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co. Inc.*, No. 04 Civ. 4309 LAKJCF, 2006 WL 212376, at *1 (S.D.N.Y. Jan. 26, 2006); *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005); *Suskind v. Home Depot Corp.*, No. CIV. A. 99-10575-NG, 2001 WL 92183, at *4 (D. Mass. Jan. 2, 2001).

Against that backdrop, any attempt to distinguish *Karn* and its progeny on the fact that none of these decisions addressed the impact of the common interest doctrine on Rule 26(a)(2)(B) disclosures is fruitless. The common interest doctrine is simply an extension of the attorney-client privilege, and since this privilege does not shield a document from discovery, then the common interest doctrine is of no use to the Plaintiffs. *See Allendale Mut. Ins. Co.*, 152 F.R.D. at 140.

### *2. Work Product Privilege*

The Plaintiffs also argue that, despite *Karn*, the work product privilege applies to the e-mails at issue here, making disclosure of them inappropriate. They attempt to distinguish *Karn* primarily on the basis that Bitler, and not Emhardt, was responsible for providing the work product to Kerwin. Specifically, the Plaintiffs argue that the policy reasons behind the *Karn* decision are based upon an attorney providing the expert with the protected information. In

6

support of this contention, the Plaintiffs point to the following policies in favor of disclosure under Rule 26(a)(2)(B):

> (a) without access to attorney-expert communication, opposing counsel may not be able to effectively reveal *the influence of counsel* over the expert testimony;
>
> (b) opposing counsel is entitled to discovery *on how counsel manipulated* the expert's analysis; [and]
>
> (c) *counsel* can easily protect genuine work product by not divulging it to the expert.

(Resp. Br. 6 (emphasis added).)

The Plaintiffs' reasons a and b are essentially the same under *Karn*, as they focus on the credibility of an expert's report when counsel has potentially influenced and manipulated the expert. In that regard, disclosure of information provided to the expert is crucial because "useful cross examination and possible impeachment can only be accomplished by gaining access to *all* of the information that shaped or potentially influenced the expert witness's opinion." *Karn*, 168 F.R.D. at 639 (emphasis added); *see also In re Air Crash at Dubrovnik, Croatia on Apr. 3, 1996*, No. MDL 1180, CIV 398CV2464AVC, 2001 WL 777433, at * 9 (D. Conn. June 4, 2001) ("[I]t is critical that an adverse party have an opportunity to explore any biases or unreliabilities that might affect an expert's objectivity." (quoting *Messier v. Southbury Training Sch.*, No. 3:94CV1706 (EBB), 1998 WL 422858, at *1 (D. Conn. June 29, 1998))); *Barna v. United States*, No. 95 C 6552, 1997 WL 417847, at * 2 (N.D. Ill. 1997) ("[A] jury is entitled to know everything that influenced an expert's opinion in order to assess his credibility.").

Because one of the purposes of disclosure under *Karn* is to assist opposing counsel in uncovering all of the information that potentially influenced an expert's testimony, it makes little difference whether the attorney or someone else provided the information and influenced the

7

expert's opinion. *See Johnson v. Gmeinder*, 191 F.R.D 638, 646 (D. Kan. 2000) ("[O]btaining the materials or documents that a testifying expert considers is crucial if an adverse party is to determine the extent to which the opinion of the expert may have been influenced by counsel or, in this case, by the non-testifying expert."). Indeed, Defendants are already suspicious that this might be occurring here, surmising that "Bitler exercised direct influence upon Kerwin, and presumably, upon Kerwin's analysis." (Defs.' Mem. of Law in Supp. of Their Mot. to Compel Produc. of E-Mails Provided to Pls.' Expert Witness, James Kerwin 6.)

Furthermore, the *Karn* decision concluded that the bright-line rule "actually preserves opinion work product protection in that there is no lingering uncertainty as to what documents will be disclosed. Counsel can easily protect genuine work product by simply not divulging it to the expert." *Karn*, 168 F.R.D at 641. To hold that work product provided to the expert by the attorney must be disclosed while information provided by the client cannot be disclosed would only create uncertainty and muddy the bright line. Indeed, as the Defendants point out, such a holding "would allow counsel to communicate with experts in secret through a 'back door' and avoid disclosure simply by going through a 'middle man.'" (Defs.' Reply in Supp. of Their Mot. to Compel 2.) Furthermore, counsel can protect work product that they do not want to disclose by instructing clients not to provide the materials to the expert. Accordingly, this Court finds that the policy reasons adopted in *Karn* lend support for disclosure here.

The Plaintiffs alternatively argue that the e-mails should still be afforded protection under the work product privilege because the e-mails had nothing to do with the subject of Kerwin's expert opinion, citing to *Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 644 (S.D. Ind. 2000) in support of their argument. The *Simon* Court initially agreed with our holding in *Karn*,

8

finding that "[a]n intentional disclosure of opinion work-product to a testifying expert witness effectively waives the work-product privilege." *Id.* at 647. However, because the production of documents to the expert was inadvertent, the *Simon* Court examined the circumstances surrounding the inadvertent production according to a balancing test. *Id* at 647-50. The Court determined that one of the crucial factors weighing against disclosure to opposing counsel was the fact that "the documents simply had nothing to do with [the expert's] testimony." *Id.* at 650.

Here, the Plaintiffs latch onto this quoted language from *Simon*, arguing that the e-mails should not be disclosed because they have nothing to do with Kerwin's testimony. The *Simon* decision, however, is inapplicable to the case at bar, as Bitler intentionally forwarded the e-mails to Kerwin; therefore, there is no need to analyze this case under the *Simon* balancing approach. Furthermore, even if the disclosure to Kerwin was deemed inadvertent, which it clearly was not, the Plaintiffs utterly fail to address any of the other factors relevant to the *Simon* balancing approach when arguing that the work product privilege applies here.[4] Finally, as will be discussed *infra*, the Plaintiffs' proposition that the e-mails have nothing to do with Kerwin's opinion is a tenuous one. Accordingly, the Plaintiffs fail to make a convincing argument under *Simon* that the work product privilege protects the e-mails here.

## B. The Plaintiffs' Argument That Kerwin Did Not "Consider" the E-mails When Forming His Opinion Is Unpersuasive

---

[4] The *Simon* Court focused on the following inquiries when deciding that the communications were protected from disclosure:
> First, how excusable or inexcusable was the neglect that led to the inadvertent disclosure? Second, is it possible to provide effective relief from the inadvertent disclosure? Third, is there any serious prospect of harm to the interests of the opponent or to the interests of justice if waiver is not found?

*Id.*

Finally, the Plaintiffs argue that because Rule 26(a)(2)(B) requires disclosure only of the information "considered" by the testifying expert, the Rule does not require disclosure here since Kerwin did not "consider" the e-mails when forming his opinion regarding the amount of damages. In support of this contention, the Plaintiffs offer the affidavit of Kerwin, who maintains that he "[does] not believe there is any information in those emails that relates to the expert opinion [he has] in this case."[5] (Kerwin Aff. ¶ 3.) Additionally, the Plaintiffs submitted the e-mails to the Court for an *in camera* inspection in an effort to demonstrate that the e-mails had nothing to do with Kerwin's testimony.

Plaintiffs' view of the term "considered" as used in Rule 26(a)(2)(B) is too narrow, as they apparently believe that for Kerwin to have "considered" the e-mails, they must directly relate to the subject matter of his testimony. This narrow perspective, however, is not supported by *Karn* and its progeny, which have held that an expert who merely reviews the documents has considered them for purposes of Rule 26(a)(2)(B). *See Trigon Ins. Co. v. United States*, 204 F.R.D 277, 283 (E.D. Va. 2001) ("[D]isclosure simply includes all documents that were provided to and reviewed by the expert."); *Simon*, 194 F.R.D at 650 ("The committee drew no distinction between reviewing a document and considering a document, and neither does this court."). In fact, some Courts have determined that as long as the expert was supplied the documents, he considered them for purposes of Rule 26(a)(2)(B). *See In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d at 1375 ("The revised rule proceeds on the assumption that fundamental fairness requires

---

[5] Kerwin's affidavit stating that he did not consider the e-mails, by itself, is hardly convincing evidence in support of the Plaintiffs' argument. As the *Simon* Court noted, "[S]uch an assertion by an expert witness could become too easy a dodge." 194 F.R.D. at 549-50; *see also United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) ("Where the expert has acquired information relevant to his opinion, [opposing counsel] should not be bound by his statements that he did not consider it." (quoting *County of Suffolk v. Long Island Lighting Co.*, 122 F.R.D. 120, 123 (E.D.N.Y 1988))).

disclosure of all information supplied to a testifying expert in connection with his testimony."); *TV-3, Inc. v. Royal Ins. Co. of Am.*, 194 F.R.D. 585, 587 (S.D. Miss. 2000) ("Many district courts, and at least one commentator, have held that the plain language of Rule 26(a)(2)(B) and the accompanying Advisory Committee Note mandates disclosure of any material, factual or otherwise, that is shared with a testifying expert witness . . . .").

These holdings conform with *Karn*'s policy reasons for establishing a bright-line rule, namely, to avoid uncertainty. *See Johnson v. Gmeinder*, 191 F.R.D 638, 649 (D. Kan. 2000) ("[A]sking this or any other court to determine whether an expert has 'considered' certain materials, *as that term is commonly used*, would require the court to explore the expert's subjective mental processes and risks the creation of an unwieldy rule that would provide uncertainty as to the protected status of work product or other privileged materials."). Accordingly, whether the e-mails had anything to do with Kerwin's report is irrelevant, as he admits that Bitler sent him the e-mails and that he produced the e-mails as part of his file, which is enough to mandate disclosure under Rule 26(a)(2)(B).

Nevertheless, after conducting an *in camera* inspection of the documents, the Court believes that the e-mails are relevant to Kerwin's opinion insofar as they reveal Bitler's potential influence on Kerwin, thereby impacting the credibility of Kerwin's report. *Compare In re Air Crash at Dubrovnik*, 2001 WL 777433, at * 9, *and Musselman v. Phillips*, 176 F.R.D 194, 200 & n.5 (D. Md. 1997) ("[D]uring pretrial discovery, it is essential that parties be able to discover not only what an opposing expert's opinions are, but also the manner in which they were arrived at, what was considered in doing so, and whether this was done as a result of an objective consideration of the facts . . . ."), *and Barna*, 1997 WL 417847, at * 2 , *and Karn*, 168 F.R.D. at

11

639, *and City of Torrance*, 163 F.R.D. at 593 (finding that documents at issue were relevant to the expert's opinions and credibility and were, therefore, discoverable), *with Simon*, 194 F.3d at 650 ("[T]here is simply no reason to believe that disclosure to [the expert] but not to [opposing counsel] will impair [opposing counsel's] ability to cross examine [the expert] effectively"). Accordingly, the Defendants are entitled to disclosure of the fifteen e-mails that were listed on the Plaintiffs' privilege log.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion to compel (Docket # 73) is GRANTED. The Court takes Defendants' request for attorney fees under advisement and gives the Defendants up to and including February 16, 2007, to file an affidavit in support of their motion for attorney fees. The Plaintiffs are to file a response by February 25, 2007, and the Defendants are to file a reply by March 1, 2007. However, if the parties reach an agreement regarding the issue of fees, they may file a statement to that effect, and the Court will deem the request for fees withdrawn.

SO ORDERED.

Enter for February 7, 2007.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
