UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BITLER INVESTMENT VENTURE II, LLC, et al., ) ) ) Plaintiffs, ) ) v. ) ) MARATHON ASHLAND PETROLEUM LLC, ) et al., ) ) Defendants. ) | CAUSE NO. 1:04-CV-477 |

**OPINION AND ORDER**

The Plaintiffs filed a motion to compel on March 5, 2007, requesting that the Court order the Defendants to respond to their requests for production of documents. (Docket # 87.) The Defendants, however, maintain that they are not required to respond because the requests are irrelevant, unduly burdensome, and overly broad. Because the Court agrees with the Defendants, their objections will be sustained and the Plaintiffs' motion to compel will be DENIED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiffs, who leased gasoline station properties to the Defendants and/or their predecessors in interest, are suing the Defendants for breach of contract and waste, alleging that the Defendants allowed fourteen of these properties ("subject properties") to deteriorate and did not restore them to the level that would allow them to be used at their highest and best use as gasoline stations. (First Am. Compl. ¶¶ 17-18.) The subject properties are located in small towns in Indiana, Michigan, and Ohio; many of the buildings on the subject properties are less than 600 square feet, are situated on less than one acre of land, and apparently are not located on heavily

trafficked thoroughfares. (Consultant Report of Michael Lady ("Lady Report") 6-7.)

To determine the amount of damages purportedly caused by the Defendants' breach of contract and waste, the Plaintiffs hired Terrell Oetzel, a real estate appraiser, and James Kerwin, a certified public accountant, to render separate expert opinions. In their expert reports, Oetzel opined that six of the subject properties are valueless due to their environmental status, while Kerwin opined that the "highest and best use" of the subject properties are as gas stations. Kerwin also extrapolated a fair market rental for each of the subject properties from the rent currently paid by Defendant Speedway SuperAmerica LLC to the Plaintiffs for a Fort Wayne, Indiana gas station.[1]

To rebut these opinions, the Defendants hired Michael Lady, a real estate appraiser, who wrote that the environmental status of the subject properties "would not necessarily prevent [them] from having functional utility or from being leased, occupied, or sold." (Pls.' Br. in Supp. of First Mot. to Compel Disc. ("Br. in Supp.") Ex. 4.) He further concluded that, contrary to Kerwin's opinion, the highest and best use of the subject properties are not as gas stations because they are located in towns already served by newer, larger, and better-located gas stations. (Lady Report 26, 33-34, 41, 49, 57, 63, 72, 80, 87, 93, 99, 107, 114-15, 122.) When rendering this opinion, Lady's report cited a total of fifty-five gas stations, but only ten of those are Marathon stations and three are Speedway stations.

In November 2006, the Plaintiffs served the Defendants with a sweeping document request, seeking detailed information concerning not only the ten Marathon and three Speedway

---

[1] At the hearing, the Plaintiffs' counsel represented that Kerwin arrived at the fair market rent by dividing the amount of rent paid at the Fort Wayne location by the square footage of the site and then multiplying the resulting number by the square footage of each of the subject properties. The Lady Report confirms the accuracy of that statement.  See, Lady Report p. 16.

stations cited in the Lady Report ("Lady properties"), but also information regarding thirty-five closed gas station properties ("surplus properties") listed for sale on Marathon's website, all "under active environmental remediation."[2] Apparently, the Plaintiffs chose these surplus properties as a discovery target because they, like the subject properties, are located in small Indiana and Michigan towns (although the subject properties and surplus properties share only four of those towns) and otherwise are somewhat similar in appearance.

---

[2] Specifically, the Plaintiffs propounded the following requests:
1. All documents that concern, mention, or regard acquisition of the [surplus properties.]
2. All documents that concern, mention, or regard offers by third parties to purchase any of the [surplus properties.]
3. All documents that concern, mention, or regard any negotiation of offers made by third parties to purchase the [surplus properties.]
4. All documents that concern, mention, or regard purchase agreements for any of the [surplus properties.]
5. All documents that concern, mention, or regard procurement of title insurance for the [surplus properties.]
6. All documents that concern, mention, or regard requests that any of the defendants indemnify potential purchasers for environmental conditions at any of the [surplus properties.]
7. All documents that concern, mention, or regard any requests for information concerning purchase or sale of any of the [surplus properties.]
8. All documents that concern, mention, or regard traffic counts for any of the [Lady properties.]
9. All documents that concern, mention, or regard monthly gasoline sales from 1992 to the present for the [Lady properties.]
10. All documents that concern, mention, or regard non-gasoline sales from 1992 to the present for the [Lady properties.]
11. All documents that concern, mention, or regard any investigation of potential revenues to be generated from any of the [Lady properties.]
12. All documents sent to any of the defendants by any environmental agency that concern, mention, or regard violations or potential violations at the [surplus properties and the Lady properties.]
13. All documents sent to any of the defendants by any municipality or county that concern, mention, or regard health or safety violations at any of the [surplus properties and the Lady properties.]
14. All documents sent to any of the defendants by any municipality or county that concern, mention, or regard zoning violations for any of the [surplus properties and the Lady properties.]
15. All photographs of any of the [surplus properties and the Lady properties.]
16. All documents that concern, mention, or regard costs incurred since 1995 to repair or maintain any of the [surplus properties or the Lady properties.]

(Pls.' First Mot. to Compel Disc. Ex. 1 ("Req. for Produc.").)

After the Defendants objected to the requests for production, the Plaintiffs filed a motion to compel on March 5, 2007, (Docket # 87), arguing that information regarding the surplus properties and the Lady properties is relevant to the calculation of damages. Specifically, the Plaintiffs believe that the surplus properties are unmarketable and if they obtain the information sought, it will help establish that the subject properties are also unmarketable. Furthermore, the Plaintiffs contend that the information sought regarding the Lady properties will help establish the fair market rental of the subject properties.

The Defendants responded to the Plaintiffs' motion on March 19, 2007, (Docket # 95), arguing that the information requested is irrelevant. Specifically, the Defendants maintain that the subject properties are so unlike the surplus properties and the Lady properties that any documents pertaining to these two groups is useless in calculating damages. They further contend that the Plaintiffs' requests are unreasonably broad and unduly burdensome.

After the Plaintiffs replied on April 2, 2007, (Docket # 100), the Court heard oral argument on April 11, 2007. (Docket # 103.) The Court then directed supplementation of the record with the complete Lady Report and affidavits regarding the estimated time necessary to amass the documents that would satisfy the Plaintiffs' discovery requests. (Docket # 104-05.) With these supplementations, the matter is now ripe for determination.

## II. DISCUSSION

### A. General Principles

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Morever, if the party seeking discovery can demonstrate good cause, the court can also order discovery relevant to

"any matter involved in the action." Fed. R. Civ. P. 26(b)(1); *see also N. Trust Co. v. MS Sec., Inc.*, No. 05 C 3370, 05 C 3373, 2006 WL 1843369, at *2 (N.D. Ill. June 30, 2006) ("Even though the [2000] amendments [to Rule 26] narrowed the definition of discovery . . . the court may still order discovery based on the pre-amendment standard, provided that there is good cause."); *Sills v. Bendix Commercial Vehicle Sys., LLC*, No. 1:04-CV-00149, 2005 WL 2777299, at *1 (N.D. Ind. Mar. 3, 2005) (noting that prior to the 2000 amendments, "discovery was . . . broadly defined as any information relevant to the subject matter involved in the pending action," but that "even under the revised rule, parties are still able to obtain discovery that is relevant to the subject matter involved in the pending action if good cause is shown"). Under the relevancy standard, "information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Although the definition of relevancy often allows for broad discovery, Rule 26(b)(2)(C) gives the court discretion to limit discovery when:

> (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C); *see also Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, No. 05 C 6386, 2007 WL 98312, at *11 (N.D. Ill. Jan. 16, 2007).

### B. The Motion to Compel Pertaining to Thirty Five Surplus Properties Will Be Denied

In request numbers 1-7 and 8-16, the Plaintiffs seek documents that they believe will indicate that the surplus properties listed on Marathon's website are unmarketable, postulating

5

that this information will help establish that the subject properties are similarly unmarketable. The Defendants, however, maintain that the requests relating to the surplus properties are irrelevant, arguing that the non-marketability of the subject properties cannot be extrapolated from any information about the surplus properties given that each parcel is not only unique, but that the Plaintiffs have also done nothing to demonstrate that there is any similarity between the subject and surplus properties.

The Defendants' objection frames the Plaintiffs' multi-layered dilemma: first, they must show that the requested information will help lead to a conclusion that some or all of Marathon's thirty-five surplus properties are unmarketable; then they must show that such a conclusion would be relevant to the inference that they hope would follow – that because the surplus properties are unmarketable, the subject properties must be similarly worthless.

Concerning the first prong, we are convinced that the Plaintiffs' requests seek information that is not only potentially voluminous, but largely irrelevant, particularly since they have made no showing, other than conclusory assurances, that any of this material would help establish that the surplus properties are unmarketable.

But even if a conclusion of non-marketability could be fashioned concerning the surplus properties, we are left to wonder how it could then be usefully applied to the subject properties, given the unique qualities possessed by any parcel of real estate and the fact that most of the subject properties are in other small towns and, unlike the surplus properties, no longer under active environmental remediation. A hint at how useless or futile such a comparison would be can be drawn from the imprecise method by which the Plaintiffs selected their so-called thirty-five comparators: picking them off Marathon's website based solely on their purported similar

6

appearance to the subject properties.[3]

Furthermore, any marginal value of the documents pertaining to the surplus properties is clearly outweighed by the substantial burden a search for them would place on the Defendants. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). "Before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it." *Sills*, 2005 WL 2777299, at *8 (internal quotation marks and citation omitted); *see also Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.*, No. 02 C 58, 2006 WL 3445742, at *4 (N.D. Ill. Nov. 22, 2006) (finding that the burden of having to produce documents was "immense" and the information sought was only "marginally probative"); *In re Gen. Instrument Corp. Sec. Litig.*, No. 96 C 1129, 1999 WL 1072507, at *6 (N.D. Ill. Nov. 18, 1999) (concluding that "the benefit of the requested discovery is minimal," while the "burden on defendants would be significant"); *Perry v. Best Lock Corp.*, No. IP 98-C-0936-H/G, 1999 WL 33494858, at *3 (S.D. Ind. Jan. 21, 1999) (weighing the "substantial" burden against the "marginal and attenuated" relevance of the proposed discovery). Moreover, if a party is to resist discovery as unduly burdensome, it must "adequately demonstrate the nature and extent of the claimed burden" by making a "specific showing as to how disclosure of the requested documents and information would be particularly burdensome." *Eley v. Herman*, No. 1:04-CV-416, 2005 WL 3115304, at *1 (N.D. Ind. Nov. 21, 2005) (quoting *Melendez v. Greiner*, No. 01 Civ.07888 SAS DF, 2003 WL 22434101, at *4 (S.D.N.Y. Oct. 23, 2003) ("[C]onclusory assertion of burdensomeness is 'entitled to no weight whatsoever.'").

---

[3] Of course, we also do not know why the Plaintiffs decided on thirty-five properties as a useful target for inquiry, as opposed to selecting a discrete few.

Here, the Defendants' counsel indicates that she asked the Defendants to conduct an initial search for responsive documents pertaining to eight of the surplus properties. Accordingly, Lisa Lautermilch, a paralegal for the Defendants' legal department, contacted various other departments where she believed responsive documents would be located. (Aff. of Lisa Lautermilch ("Lautermilch Aff.") ¶¶ 2-4.) According to Lautermilch, she spent five hours "in requesting these documents," and departmental employees spent a total of 45.25 hours collecting documents. (Lautermilch Aff. ¶ 5.) Moreover, the Defendants' counsel indicates that she spent approximately 4 hours reviewing the documents produced, that most were not responsive to the Plaintiffs' requests, and that others contained confidential information. (Aff. of Barbara J. Meier ("Meier Aff.") ¶¶ 2-4.) Based on this initial search, counsel estimates that "an additional 20 paralegal and attorney hours" would be needed to complete the document production "for these eight properties."[4] (Meier Aff. ¶ 5.)

This burden on the Defendants is further compounded by the sheer breadth of the discovery requests, an issue the Court will address more fully later. *See Lawrence E. Jaffee Pension Plan*, 2006 WL 3445742, at *4 ("[T]he burden . . . in having to produce the documents sought is immense due to the sheer breadth of the . . . requests . . . ."); *Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, No. 02 C 978, 2002 WL 1162848, at *6 (N.D. Ill. May 24, 2002) (noting that the "plaintiffs' broad request . . . imposes a significant burden"). Viewed in its totality, it would, therefore, be unduly burdensome for the Defendants to respond to the Plaintiffs' requests for production of documents pertaining to the surplus properties, particularly given the speculative, and at most, marginal relevance of the requests. *See Sills*, 2005 WL

---

[4] Such a projection suggests that, at a minimum, approximately 325 hours of attorney, paralegal and employee time would be needed for an initial response for all 35 properties.

2777299, at *8; *Lawrence E. Jaffee Pension Plan*, 2006 WL 3445742, at *4; *In re Gen. Instrument Corp. Sec. Litig.*, 1999 WL 1072507, at *6; *Perry*, 1999 WL 33494858, at *3.

**C. The Plaintiffs' Motion to Compel Pertaining to the Lady Properties Will Also Be Denied**

In request numbers 8-16, the Plaintiffs seek documents regarding the Marathon and Speedway stations cited in the Lady Report, claiming that this information will help establish the fair market rental of the Lady properties and by extension, establish appropriate rental values for the subject properties. At the outset, we are confronted by a practical objection: the Defendants maintain that the requested documents pertaining to the ten Marathon stations are not in their possession, custody, or control. *See* Fed. R. Civ. P. 34(a) (permitting a party to serve on any other party a request to produce "any designated documents . . . which are in the possession, custody or control of the party upon whom the request is served"). "Documents are in the 'possession, custody or control' of the served party if 'the party has *actual* possession, custody, or control, or has the legal right to obtain the documents on demand.'" *Eley*, 2005 WL 3115305, at *2 (quoting *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)).

Here, the Defendants claim that they do not have actual or constructive possession, custody, or control of the requested documents since the Marathon stations are not owned, leased, or controlled by them and that they are instead operated by non-parties and supplied by independent "jobbers." The Plaintiffs do not challenge this assertion other than to argue that the Defendants "must" at least have records of gasoline sales to the jobbers. (*See* Req. for Prod. # 9.) Those sales, however, are made to a jobber in bulk, without reference to any particular gas station serviced by that jobber, and therefore even those purportedly responsive documents are not, at least in a useful sense, in the Defendants' possession, custody, or control.

9

As to the remaining Lady properties involving three Speedway service stations, although the Defendants might have some responsive information pertaining to them, this information is largely irrelevant to the fair market rental of the subject properties, and the Plaintiffs fail to demonstrate good cause for why it is needed. *See* Fed. R. Civ. P. 26(b)(1); *N. Trust Co.*, 2006 WL 1843369, at *2 ("Good cause generally provides a 'sound basis or legitimate need' for the court to take action") (quoting *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997))). For example, there is no indication from Kerwin, by affidavit or otherwise, that any of this information is essential or even important to any opinion regarding the fair market rental of the subject properties he has given or hopes to give. After all, Kerwin, who has already been deposed, was able to offer an opinion concerning the fair market rental of the subject properties without apparently knowing any of the information sought by the Plaintiffs.[5] Similarly, the Plaintiffs make no showing beyond conclusory assertions that this information would actually support their position or theory concerning the fair market rental of the subject properties - which is, after all, a straight forward square footage calculation.[6]

---

[5] Moreover, the Defendants argue that the overall speculative nature of applying the fair market rental of the Speedway stations to the subject properties is demonstrated by the fact that the three Speedway gas stations mentioned by Lady are big, modern facilities (i.e., equipped with sizeable convenience stores) located on large lots either near interstate exchanges or on busy streets. (Lady Report 26, 33, 114.) The Defendants further point out that, in contrast, the subject properties are old, former small gas stations located away from major traffic arteries and positioned on small lots. Thus, the Defendants conclude that any determination of the fair market rental that could be derived concerning the Speedway properties would hardly be transferrable to any calculation concerning the fair market rental value of the subject properties.

Of course, the Court anticipates that the Defendants will make a similar argument if they attempt to strike Kerwin's expert report – that is, that the application of the fair rental value of the Fort Wayne gas station property to the subject properties is highly speculative given the differences between the Fort Wayne property and the subject properties. If the Defendants are ultimately successful at striking Kerwin's fair rental value theory, then the Plaintiffs' current theory regarding the transferability of the fair rental value of the Speedway properties to the subject properties ostensibly would be similarly defeated, further confirming the irrelevance of the information that the Plaintiffs' now seek.

[6] The information the Plaintiffs request would also not be useful for impeaching Lady who merely applied a 12% rental factor to the estimated market value of each property, again without any reference to the information

### D. The Plaintiffs' Requests for Production of Documents Fail to Describe the Documents Requested with Reasonable Particularity

Federal Rule of Civil Procedure 34(b) requires that a request for production of documents describe the documents requested with "reasonable particularity." The test for reasonable particularity is whether the request places a party upon "reasonable notice of what is called for and what is not." *Bruggeman ex rel. Bruggerman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C.1992)). Therefore, a court can deny a motion to compel discovery when the requesting party fails to provide "sufficient information to enable [the party to whom the request is directed] to identify responsive documents." *Id.* (quoting *Parsons*, 141 F.R.D. at 412) (denying a motion to compel because the language in the request for production was "overly-broad and extremely vague"); *see also Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D 115, 121 (N.D. Ind. 1991) (finding that plaintiffs' request for production of documents "falls far short of fulfilling the requirement of Rule 34(b) that each item or category of documents be described 'with reasonable particularity'").

Here, the Plaintiffs' requests for production fail to describe the "documents" that the Plaintiffs seek with reasonable particularity, as the specific requests are unlimited in scope and largely unlimited as to time. *See Amcast Indus. Corp.*, 138 F.R.D. at 121 ("[T]he request is unlimited as to time frame, as well as the types of 'writings' which are sought, and it falls far short of fulfilling the requirement of Rule 34(b) that each item or category of documents be described 'with reasonable particularity.'"). In fact, in the rare instance in which the Plaintiffs

---

being sought. (*See* Lady Report 18-19.)

11

impose a temporal restriction (*see* Req. for Prod. # 9, 10, 16), they ask for fifteen or twelve years' worth of information with no rationale for why information concerning that length of time is needed.

In short, these overly broad requests amount to little more than a fishing expedition, particularly since the information would at best be marginally relevant. *See United States v. Lake County Bd. of Comm'rs*, No. 2:04 cv 415, 2006 WL 1660598, at *1 (N.D. Ind. June 7, 2006) ("[D]iscovery 'has ultimate and necessary boundaries.' The relevancy requirement 'should not be misapplied so as to allow fishing expeditions in discovery.'" (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Zenith Elecs. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998))); *Amcast Indus. Corp.*, 138 F.R.D. at 121 ("While there can be no doubt, as the plaintiffs insist, that their [request] may net some relevant information, the same could perhaps be said of a request for each and every document in [defendant's] possession. The request in this instance represents not merely a 'fishing expedition,' but as one court described it, an effort to 'drain the pond and collect the fish from the bottom.'").

Consequently, the Court will sustain the Defendants' objections and will deny the Motion to Compel.

### III. CONCLUSION

For the foregoing reasons, the Plaintiffs' motion to compel (Docket # 87) is DENIED.

SO ORDERED.

Enter for April 18, 2007.

S/Roger B. Cosbey<br>
Roger B. Cosbey<br>
United States Magistrate Judge

13