UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BITLER INVESTMENT VENTURE II, LLC, ) <br> BITLER INVESTMENT VENTURE III, LLC, ) <br> BITLER INVESTMENT VENTURE V, LLC, ) <br> BITLER INVESTMENT VENTURE VI, LLC, ) <br> MELCHING INVESTMENT VENTURE II, LLC, ) <br> MELCHING INVESTMENT VENTURE III, LLC, ) <br> MELCHING INVESTMENT VENTURE V, LLC, ) <br> MELCHING INVESTMENT VENTURE VI, LLC, ) <br> and TWO PORTLAND PROPERTIES #1, LLC, ) <br> ) <br>     Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> MARATHON ASHLAND PETROLEUM, LLC, ) <br> SPEEDWAY SUPERAMERICA, LLC, and ) <br> MARATHON OIL COMPANY, ) <br> ) <br>     Defendants. ) | CAUSE NO.: 1:04-CV-477-TLS |

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion to Strike the Affidavit of Richard A. Ford and the Second Affidavit of J. Maxine Melching in Whole or in Part [ECF No. 179]. The Defendants also filed a Brief in Support [ECF No. 180] of their Motion. The Plaintiffs filed a Response [ECF No. 187] opposing the Defendants' Motion, and the Defendants filed a Reply [ECF No. 189].

In their Motion to Strike, the Defendants ask the Court to strike portions of two affidavits (Paragraphs 3 through 5 and 9 through 13 of the First Affidavit of Richard J. Ford [ECF No. 165-2] and Paragraphs 4 through 13 of the Second Affidavit of J. Maxine Melching [ECF No. 165-3]) that the Plaintiffs submitted along with their Brief in Response [ECF No. 164] and Submission of Evidence [ECF No. 165] opposing the Defendants' Motion for Partial Summary

Judgment on Plaintiffs' Non-Environmental Claims at Selected Properties [ECF No. 131].[1] This Motion for Partial Summary Judgment filed by the Defendants relates to the Plaintiffs' claims involving their properties in the following locations: Angola, Indiana; and Adrian, Battle Creek, Coldwater, Michigan Center, Owosso, and Portland, Michigan. In their Motion to Strike, the Defendants argue that statements in the affidavits do not comply with Federal Rule of Civil Procedure 56(e), which has since been amended and the relevant standard is now set forth in Rule 56(c). They also argue that these affidavits are replete with inadmissible hearsay, unsupported assertions, and "beliefs" that are inadmissible. The Plaintiffs respond that the statements and the affidavits should not be stricken because each, when read as a whole and in the context of the matters at issue, demonstrates the personal knowledge of the affiant, shows the affiant is competent, and sets forth facts as would be admissible at trial.

Under Federal Rule of Civil Procedure 56(c)(4), any affidavit or declaration "used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." On a motion for summary judgment, a court must not consider parts of an affidavit that fail to comply with the rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). Affidavit testimony must concern matters within the affiant's personal knowledge. *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003); *see also* Fed. R. Evid. 602 ("A witness may not

---

[1] The Defendants' Motion for Partial Summary Judgment on Plaintiffs' Non-Environmental Claims at Selected Properties is another in a series of summary judgment motions filed by the parties that together seek summary judgment on each of the twenty-eight claims asserted by the Plaintiffs in this case. The Defendants have also filed a series of motions *in limine* and motions to strike. This Opinion and Order addresses only one of the Motions to Strike filed by the Defendants.

testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Personal knowledge is not a rigid requirement; it also "includes opinions and inferences grounded in observations or other first-hand experience." *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999) (citing *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991)). The following statements do not comply with the rule and should be disregarded: (1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture. *Smith v. Hydro Aluminum N. Am., Inc.*, No. 3:08-CV-153, 2010 WL 1382113, at *1 (N.D. Ind. Mar. 30, 2010); *Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (quotation marks and citations omitted). Although "self-serving statements in affidavits without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record [can] defeat summary judgment," and the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted).

At the summary judgment stage, a court does not evaluate the relative veracity of each party's facts, provided the claims are not implausible on their face, even if the one-sidedness of the allegations causes the court to raise a brow. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d

751, 761–62 (7th Cir. 2006). Likewise, a court "do[es] not vouch for the truth of the facts, but rather merely use[s] them to determine whether the case can be resolved as a matter of law." *Id.* at 762 (citation omitted). A court may rely on all admissible evidence, even if the evidence is not presented in admissible form. *Stinett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

In this Opinion and Order, the Court will evaluate the statements challenged by the Defendants in their Motion to Strike. However, when the Court in a separate Opinion and Order addresses the legal issues presented by the Defendants' Motion for Partial Summary Judgment, the Court will analyze the facts under the governing procedural and substantive law, sift through the evidence, consider each piece under the applicable federal rules, consider the admissibility of statements, and determine whether there are any irrelevant, inadmissible, conclusory, or speculative assertions that should be disregarded.

**A.     The First Ford Affidavit**

Richard J. Ford is the vice president of real estate for Superior Auto, Inc., and he was responsible for entering into leases of the commercial real estate owned by the Bitlers and the Melchings in Celina, Ohio; Huntington and Ligonier, Indiana; and Sturgis and Hillsdale, Michigan. The Plaintiffs have conceded that Mr. Ford's statements in his First Affidavit relate only to 6 of the 14 properties in this case—namely, the properties in Celina, Ohio; Huntington and Ligonier, Indiana; and Adrian, Hillsdale, and Sturgis, Michigan—and that Mr. Ford did not make periodic visits to each of the 6 properties throughout the 1990s. Only one of these properties (the Adrian, Michigan property) is at issue in the Defendants' Motion for Partial

4

Summary Judgment on Plaintiffs' Non-Environmental Claims at Selected Properties. Consequently, Mr. Ford's statement have limited relevance to the properties at issue in this Motion for Partial Summary Judgment, and the Court will restrict their use accordingly.

The Defendants challenge the following statement in Paragraph 3 of the First Ford Affidavit:

> As properties were held longer and longer by Marathon through the [1990s] before being available for lease, their conditions became worse and worse.

Mr. Ford has within his personal knowledge, and he is competent to testify to, what he observed regarding the Adrian, Michigan property (and the other 5 properties). The Ford Affidavit does not show a basis for his conclusory assessment that the condition of the Adrian, Michigan property "became worse and worse." The Court will grant the Motion to Strike as to those matters beyond Mr. Ford's personal knowledge and competence in Paragraph 3 of the First Ford Affidavit.

The Defendants challenge all of Paragraphs 4 and 5 of the First Ford Affidavit:

> Superior Auto entered into a lease of the Hillsdale property in 1999. I was responsible for inspecting the Hillsdale property to determine what repairs would need to be done to make the location tenantable for Superior Auto. On August 20, 1998, I inspected the Hillsdale property. Attached as Exhibit 1 is a copy of the inspection report that I prepared close to the time I inspected the property. I sent a copy of Exhibit 1, as part of my business duties at Superior Auto, to Mr. Gilbert to determine whether Emro Marketing or Marathon believed that it was not responsible for any of the 26 items listed. The 26 items listed all were items I believed were necessary as repairs at the Hillsdale location.

> Attached as Exhibit 2 is a note I faxed to Mr. Max Melching on August 26, 1998, along with my notes of my conversation with Mr. Gilbert concerning the August 20, 1998 report. Mr. Gilbert agreed to pay for items 1, 4, 11, 12, 19, 21, 24, and 26. Mr. Gilbert also told me that he believed that Marathon was responsible for HVAC, electrical, plumbing, and roof issues if such problems were discovered later. I understood Mr. Gilbert to be stating that his company's lease obligations and other obligations required him to cover such repairs.

These statements apply to the Hillsdale, Michigan property, and consequently they are of only limited relevance to the properties at issue in the Defendants' Motion for Partial Summary Judgment on Plaintiffs' Non-Environmental Claims at Selected Properties. The Court need not strike these paragraphs; rather, it will only give them the consideration warranted in ruling on the Defendants' Motion for Partial Summary Judgment. Mr. Ford has within his personal knowledge, and he is competent to testify to, what he observed, what he did, and what his understanding was. The Court will deny the Defendants' Motion to Strike as to Paragraphs 4 and 5 of the Ford Affidavit, but the Court will limit its consideration of the facts related to the Hillsdale property on relevancy grounds when it rules on the Defendants' Motion for Partial Summary Judgment.[2]

> The Defendants challenge Paragraphs 9 and 10 of the First Ford Affidavit:
>
> On February 10, 2000, I sent a memo to Mr. Gilbert enclosing an estimate from a respected Adrian, Michigan contractor in the amount of $41,300 to take care of the repairs needed for the Adrian site, and an invoice from the company for work done to repair the heating and lighting in the building so that work could be performed there during the winter. A copy of the memo is attached as Exhibit 4.
>
> Later in February, 2000, I began to have Mr. Nick Schenkel assist in negotiating for repairs. He negotiated, with my supervision, for the repairs. After a complete investigation, we determined that the most reasonable cost estimate for repair of the site was $52,000. Mr. Gilbert refused to pay for all the repairs requested. He offered the sum of $35,000 instead as a final offer. Attached as Exhibit 5 is a copy of a May 11, 2000, letter from Mr. Schenkel to Mr. Gilbert, copied to me as Mr. Schenkel's supervisor, informing Mr. Gilbert that Superior Auto was not willing to bridge the gap between $52,000 required for repairs and the $35,000 offered. I did not hear from Mr. Gilbert after May 11, 2000.

---

[2] In their Reply, the Defendants ask the Court to exclude evidence of compromise negotiations of disputed claims and offers to compromise under Rule of Evidence 408. They present this argument as to several statements in the two affidavits challenged by this Motion to Strike. This argument has not been properly subjected to adversarial testing in the context of this Motion to Strike. However, when the Court addresses the Defendants' Motion for Partial Summary Judgment, the Court will not consider evidence that should be excluded under Rule of Evidence 408.

Mr. Ford has within his personal knowledge, and he is competent to testify to, what he observed, what he did, and what his understanding was. It does not appear that either document is being offered for the truth of the matter asserted. Accordingly, the Court will deny the Defendants' Motion to Strike Paragraphs 9 and 10 of the First Ford Affidavit.

>The Defendants challenge Paragraphs 11 and 12 of the First Ford Affidavit:
>
>As with Hillsdale, Mr. Gilbert informed me that he believed his company was liable for repairs at Adrian. I do not recall how he calculated his offer to take care of the liability at $35,000 and am not aware of any counterproposals he had for doing the work more cheaply than the $52,000 we determined through our extensive inspection and review of the Adrian site.
>
>Superior Auto was not willing to pay the additional $17,000 that Mr. Gilbert refused to pay and for that reason Superior Auto decided not to rent Adrian.

Mr. Ford has within his personal knowledge, and he is competent to testify to, what he observed, what he did, why he did what he did, and what he remembers. Although a more precise identification than the word "company" would be helpful, that does not provide an adequate basis for excluding Paragraph 11. The Court will deny the Defendants' Motion to Strike Paragraphs 11 and 12 of the First Ford Affidavit.

>The Defendants challenge Paragraph 13 of the First Ford Affidavit:
>
>Based on my inspection of Adrian, my experience with the other Bitler/Melching properties, and my experience in leasing real estate generally, Marathon must have abandoned the Adrian location after discontinuing business operations there and had left it to rot.

This conclusory and speculative statement lacks a proper foundation and extends beyond what Mr. Ford has within his personal knowledge as to which he is competent to testify. The Court will grant the Defendants' Motion to Strike Paragraph 13 of the Ford Affidavit.

**B.     The Second Melching Affidavit**

Mrs. Melching is the widow of Mr. Melching and the mother-in-law of Mr. Philip Rodenbeck. Throughout the time that the Bitlers and the Melchings owned and leased the properties as gasoline stations that are the subject of this lawsuit, she assisted her husband and Mr. Bitler in these business dealings, and she and her husband visited each of the properties periodically throughout the 1990s, both before and after the removal of underground storage tanks from the properties.

The Defendants challenge the following statement in Paragraph 4 of the Second Melching Affidavit:

> With respect to the Adrian site, Max and I were informed by Mr. Richard A. Ford that Superior Auto wished to lease the site but that the site was in need of extensive repairs.

To the extent that the Plaintiffs' offer the statement that "the site was in need of extensive repairs" for the truth of the matter asserted, the Court will grant the Defendants' Motion to Strike the second subordinate clause in Paragraph 4 of the Second Melching Affidavit.

The Defendants challenge the following statements in Paragraph 5 of the Second Melching Affidavit:

> The problems identified by Mr. Ford caused concern because it appeared that Mr. Gilbert and Marathon might be reneging on the promises made to Max and me repeatedly through the [1990s] that Emro, and then Marathon, would repair the sites to get them in a condition equal to or better than when they had discontinued operations.

Mrs. Melching has personal knowledge of, and is competent to testify to, what she observed and what she thought. Although her reference to Mr. Gilbert's promises lacks some specificity, this concerns the credibility and the weight of the evidence, which the Court does not determine or weigh at this stage. The Court will deny the Defendants' Motion to Strike Paragraph 5 of the

Second Melching Affidavit.

The Defendants challenge the following statements in Paragraph 6 of the Second Melching Affidavit:

> . . . I understood Mr. Gilbert to again be confirming to me that Marathon would restore all of the locations to an equal or better condition than they were in when Marathon discontinued business operations and that the use of the properties as gas stations had made their resale values less than if they had been used for some other purpose. Mr. Gilbert was interested in purchasing Adrian at the time and wanted an offer from us to try to take care of the damage that Marathon had caused to the site by leaving it and not maintaining it.

Mrs. Melching has personal knowledge of, and is competent to testify to, what she observed and what she thought. The context of her statement shows that her understanding involved the Adrian property and her communication with Mr. Gilbert. The Court will deny the Defendants' Motion to Strike Paragraph 6 of the Second Melching Affidavit.

The Defendants challenge the following statements in Paragraphs 7, 8, and 9 of the Second Melching Affidavit:

> . . . On October 6, 2000, I wrote Mr. Gilbert to inquire about a location-by-location commitment to repair pavement and restore buildings. Adrian was included on the memorandum that Phil prepared to go with my letter. At that time, Mr. Gilbert already had promised to resume rent on the Adrian site as partial compensation for the poor condition that it was in that had resulted in losing Superior Auto as a tenant. That letter . . . is attached to this affidavit as Exhibit 2. By Adrian, Phil typed "Back rent past due."
>
> . . . Mr. Gilbert confirmed in that letter, attached to this affidavit as Exhibit 3, that the Adrian building would be restored and [] Marathon would pay for repaving there. I understood from the letter that Mr. Gilbert wanted to wait until some time later to deal with the issue but that he would not dishonor the promise he had made to me. His statement, "Rest assured, Marathon Ashland Petroleum LLC fulfills its obligations" was an indication to me that Mr. Gilbert was committing Marathon to pay for all issues relating to building restoration and repaving and all other potential losses relating to Marathon's use of the premises as gas stations, from November 7, 2000, forward.

9

> Consistent with his promises for Adrian, shortly after the November 7, 2000, letter, Marathon made a payment to us of back rent for Adrian as remediation at the site continued.

Mrs. Melching has personal knowledge of, and is competent to testify to, what she observed, what she did, and what her understanding was. Although her references to Mr. Gilbert's promises may lack some specificity, this concerns the credibility and the weight of the evidence, which the Court does not determine or weigh at this stage. Mrs. Melching's statements about the two documents referenced in these paragraphs appear to be based upon her first-hand knowledge of events, not simply her knowledge of the documents, and both documents have been submitted for the Court's consideration. Additionally, some of her statements are for authentication purposes. The Court will deny the Defendants' Motion to Strike Paragraphs 7, 8, and 9 of the Second Melching Affidavit.

The Defendants challenge the following statements in Paragraph 10 of the Second Melching Affidavit:

> I have reviewed a letter of September 12, 2001, from Mr. Gilbert to my husband. By September 2001, my husband had completely disengaged from decision making related to any real estate interests. His hearing had deteriorated to such an extent that he could not have engaged in a meaningful phone discussion with Mr. Gilbert. By no later than October 2000, I had informed Mr. Gilbert that Max and I needed the help of family members to make decisions on the properties.

Mrs. Melching has personal knowledge of, and is competent to testify to, what she observed, what she did, and what her understanding was. Her husband's engagement or disengagement from managing their real estate business is a matter within her personal knowledge, but her opinions about his hearing ability and his ability to engage in a meaningful telephone discussion extend beyond her personal knowledge. Although Mrs. Melching's statement that she had informed Mr. Gilbert by October 2000 that she and her husband needed the help of family

members may lack some specificity, this concerns the credibility and the weight of the evidence, which the Court does not determine or weigh at this stage. The Court will grant the Defendants' Motion to Strike the opinion statements of Mrs. Melching regarding Mr. Melching's hearing ability and his ability to engage in meaningful telephone discussion, but otherwise deny the Motion to Strike Paragraph 10 of the Second Melching Affidavit.

> The Defendants challenge Paragraphs 11, 12, and 13 of the Second Melching Affidavit:
>
> I do not believe that the permission given to remove the Adrian building changed Mr. Gilbert's earlier promises to me to restore all the buildings, including Adrian, to an equal or better condition than they were in when Marathon was using them. Mr. Gilbert already had admitted that the Adrian building had deteriorated to such a poor condition as a result of Marathon's neglect that it added no value to the real estate. He provided us with the Goodrow appraisal information in September 2000 to value Adrian without the building because Marathon's neglect and breach of the Adrian lease and Master Amendment had caused the building to have no value. Removing the building was just the beginning of the restoration obligation for Adrian.
>
> Based on my dealings with Mr. Gilbert and his promises, I believe that the removal of any buildings and improvements was just the first step in honoring the building restoration obligations provided again in the November 7, 2000 letter.
>
> Mr. Gilbert never told me in our conversations that he believed that there was no maintenance obligation under the 1983 leases or the Master Amendment, as I now understand Marathon is claiming. To the contrary, he admitted such obligations to me repeatedly.

Mrs. Melching has personal knowledge of, and is competent to testify to, what she observed and what her understanding was. Her opinions on Mr. Gilbert and Defendant Marathon's motivation and Defendant Marathon's alleged neglect and breach extend beyond her personal knowledge and competence—the Court will determine legal obligations and performance based upon the agreements and other evidence in the record, not the legal conclusions of a lay witness regarding alleged obligations and breaches. The Court will grant the Defendants' Motion to Strike Mrs.

11

Melching's statement regarding the motivation for providing the appraisal information and her opinion statements regarding the Defendants' neglect and breach, but otherwise deny the Motion to Strike Paragraphs 11, 12, and 13 of the Second Melching Affidavit.

The Court will grant the Defendants' Motion to Strike as noted above, but will otherwise deny the Motion.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion to Strike the Affidavit of Richard A. Ford and the Second Affidavit of J. Maxine Melching in Whole or in Part [ECF No. 179].

SO ORDERED on March 31, 2011.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT